**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ECLECTIC PROPERTIES EAST, LLC, a
California limited liability company;
RISOLA FAMILY LP II, a Florida
limited partnership; CECA 3000, LP,
a Nevada limited partnership;
CHEATHAM PROPERTIES, LLC, a
California limited liability company,
successor in interest of John and
Mary Cheatham; VAS ENTERPRISES I
LLC, a California limited liability
company; AMNON DANUS; RIVKA
DANUS; LINDA FARRELL; JOSEPH W.
AMIRKHAS; JOSEPH W. AMIRKHAS,
as Trustee under the Amirkhas Trust,
dated January 14, 2000; JUSTUS L.
AHREND; SUSAN W. AHREND,
Trustees of the Justus and Susan
Ahrend Trust, dated December 6,
1990; KEVORK BELIKIAN; SYLVIA S.
BELIKIAN, Trustees under the
Kevork Belikian and Sylvia S.
Belikian Living Trust, dated July 10,
2000; MANI ETEMAD; SUSAN
KHOSHNOOD, Trustee of the Mani
Etemad and Susan Khoshhood 2001
Revocable Trust; EUGENIA GAGNON,
Trustee of the Genie Debs
Revocable Trust, dated October 10,
1995; THOMAS H. LINDEN; SYLVIA

No. 12-16526

D.C. No.
5:09-cv-00511-
RMW

OPINION

E. LINDEN, Trustees of the Thomas H. Linden and Sylvia E. Linden Family Trust, dated September 19, 2000; JOHANNES MODERBACHER; EILEEN STARR MODERBACHER, as Trustees of the Moderbacher Family Trust, established by Declaration of Trust, dated February 1, 2006; RICHARD W. SIEBERT; DEBRA M. SIEBERT, Trustees of the Siebert Family Trust U/DT, dated January 13, 2003; ALLEN ERNEST HOM, Trustee for the Allen Ernest Hom Trust, dated August 19, 1992; LINDA J. CALL, Trustee for the Linda Jeanne Call Family Trust, dated September 12, 2002,

*Plaintiffs-Appellants*,

v.

THE MARCUS & MILLICHAP COMPANY, a California corporation; MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES INC., a California corporation; MARCUS & MILLICHAP REAL ESTATE INVESTMENT BROKERAGE COMPANY, a California corporation; SOVEREIGN INVESTMENT COMPANY, a California corporation; SOVEREIGN SCRANTON LLC, a Delaware limited liability company; SOVEREIGN CC,

LLC, a Delaware limited liability company; SOVEREIGN JF, LLC, a California limited liability company; PAUL A. MORABITO, individually and as the alter-ego of Eureka Petroleum Inc., a New York corporation, Tibarom Inc., a Delaware corporation, Tibarom NY LLC, a Nevada limited liability company, Tibarom PA LLC, a Nevada limited liability company, Scranton Lube, LLC a Delaware limited liability company; EUREKA PETROLEUM, a New York corporation; TIBAROM INC., a Delaware corporation; TIBAROM NY LLC, a Nevada limited liability company; TIBAROM PA LLC, a Nevada limited liability company; SCRANTON LUBE, LLC, a Delaware limited liability company; NY SEVEN LUBE, LLC, a Delaware limited liability company; NEW YORK LUBE NUMBER 3, LLC, a Delaware limited liability company; ROCHESTER LUBE, LLC, a Delaware limited liability company; BARUK MANAGEMENT, INC., a California corporation; JACK WAELTI, individually and as the alter-ego of the QSR Group One, LLC, a Florida limited liability company, The QSR Group, LLC, a Florida limited

liability company, and the QSR Group II, LLC, a Florida limited liability company AKA The QSR Group Two, LLC; THE QSR GROUP ONE, LLC, a Florida limited liability company; THE QSR GROUP, LLC, a Florida limited liability company; THE QSR GROUP II, LLC, a Florida limited liability company, AKA The QSR Group Two, LLC; PGP VALUATION, INC., an Oregon corporation; GLEN D. KUNOFSKY; MARCUS MUIRHEAD; ALEXANDER MICKLE; SEAN PERKIN; DONALD EMAS; ANDREW LESHER; STEWART WESTON; BRICE HEAD; DAIZY GOMEZ; BRET KING,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, Senior District Judge, Presiding

Argued and Submitted
March 14, 2014—San Francisco, California

Filed May 7, 2014

Before: J. Clifford Wallace and Ronald M. Gould, Circuit Judges, and Paul C. Huck, Senior District Judge.[*]

Opinion by Judge Gould

---

[*] The Honorable Paul C. Huck, Senior District Judge for the U.S. District Court for the Southern District of Florida, sitting by designation.

## SUMMARY[**]

### RICO

The panel affirmed the dismissal of an action under the Racketeering Influenced and Corrupt Organizations Act.

The panel held that the plaintiffs did not plead facts sufficient under Federal Rules Civil Procedure 8(a) and 9(b) to support a plausible theory of RICO and RICO conspiracy violations in connection with an alleged real estate scheme. The panel held that the complaint did not meet the pleading standards required by *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* because it did not contain adequate factual allegations to plausibly infer that the defendants specifically intended to defraud, and therefore did not show a plausible entitlement to relief.

### COUNSEL

Susan Alexander (argued), Sanford Svetcov, and Andrew S. Love, Robbins Geller Rudman & Dowd LLP, San Francisco, California; David J. George and Bailie L. Heikkinen, Robbins Geller Rudman & Dowd LLP, Boca Raton, Florida; and Bonny E. Sweeney and Phong L. Tran, Robbins Geller Rudman & Dowd LLP, San Diego, California, for Plaintiffs-Appellants.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Daniel Purcell (argued), John W. Keker, and Dan Jackson, Keker & Van Nest LLP, San Francisco, California, for Defendants-Appellees The Marcus & Millichap Company, Sovereign Investment Company, Sovereign Scranton LLC, Sovereign CC, LLC, and Sovereign JF, LLC.

David C. Scheper, Julio V. Vergara, and Katherine B. Farkas, Scheper Kim & Harris LLP, Los Angeles, California, for Defendants-Appellees Marcus & Millichap Real Estate Investment Services, Inc., Marcus & Millichap Real Estate Investment Brokerage Company, Marcus Muirhead, Sean Perkin, Donald Emas, Andrew Lesher, Stewart Weston, Brice Head, and Bret King.

Dennis C. Vacco and Brendan H. Little, Lippes Mathias Wexler Friedman LLP, Buffalo, New York, for Defendants-Appellees Paul A. Morabito and Baruk Management, Inc.

Timothy A. Horton, McKenna Long & Aldridge LLP, San Diego, California, for Defendants-Appellees Tibarom NY, LLC and Tibarom PA, LLC.

Scott Wm. Davenport, Manning & Kass, Ellrod, Ramirez, Trester LLP, Irvine, California, for Defendant-Appelle PGP Valuation, Inc.

Eugene Ashley, Hopkins & Carley, ALC, San Jose, California, for Defendants-Appellees Glen Kunofsky and Daizy Gomez.

**OPINION**

GOULD, Circuit Judge:

We consider whether Plaintiffs-Appellants have pleaded facts sufficient under Federal Rules of Civil Procedure 8(a) and 9(b) to support a plausible theory of Racketeering Influenced and Corrupt Organizations Act ("RICO") and RICO conspiracy violations against Defendants-Appellees. We have jurisdiction under 28 U.S.C. § 1291, and we hold that Plaintiffs' complaint does not meet the pleading standards required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011); and *In re Century Aluminum Co. Securities Litigation*, 729 F.3d 1104 (9th Cir. 2013). The complaint does not contain adequate factual allegations to plausibly infer that Defendants specifically intended to defraud, and therefore does not show a plausible entitlement to relief.[1] The district court did not err in dismissing Plaintiffs' complaint on the pleadings.

**I**

The scheme alleged by Plaintiffs began when defendants Paul Morabito and Jack Waelti purchased 22 commercial real estate properties in bulk for a total of about $20.3 million. Morabito, Waelti, and their related companies then added a commercial lease for a franchise on each property. Morabito and his related entities placed Jiffy Lube franchises

---

[1] Because we hold that Plaintiffs did not plead a plausible intent to defraud as to all Defendants, we do not reach the individual defendants' independent personal defenses as to other elements of RICO or corporate liability.

on the properties he owned, while Waelti and his related entities placed Church's Chicken franchises on theirs.[2] The Morabito and Waelti entities executed sale-leaseback transactions with Sovereign Investment Company or a related entity,[3] becoming tenants on the real estate that they had purchased. According to Plaintiffs, the fair market value of the 22 commercial real estate properties was not $20.3 million, but $11.1 million.

Plaintiffs allege that the Morabito, Waelti, and Sovereign entities conspired to pay inflated rent payments so that the properties would appear far more valuable to third parties. Sovereign Investments then marketed the properties for sale to the public through the Marcus & Millichap Company

---

[2] Some of the Jiffy Lube leases were held by Defendants Eureka Petroleum, Tibarom Inc., Tibarom NY, LLC, Tibarom PA, LLC, and Scranton Lube, LLC, all of which are alleged to be alter-egos of Paul Morabito and are also separately named as defendants. Other Jiffy Lube leases were held by Defendants New York Seven Lube LLC, New York Lube Number 3, LLC, and Rochester Lube, LLC. These Defendants are alleged to have been controlled by Morabito. We refer to these two groups collectively as the "Morabito entities." The Church's Chicken leases were held by Defendants The QSR Group, LLC, The QSR Group One, LLC, all of which are alleged to be alter-egos of Jack Waelti and are also separately named as defendants. Collectively, we refer to this group as the "Waelti entities." We take no position on the allegations relating to the corporate relationships in these groups alleged in the complaint. *See* footnote 1, *supra*.

[3] The complaint alleges that Defendants Sovereign Scranton LLC, Sovereign CC, LLC, and Sovereign JF, LLC, are all alter-egos of Defendant Sovereign Investment Company. We refer to this group as the "Sovereign entities." Again, we take no position on the allegations in the complaint relating to the corporate relationships in this group. *See* footnote 1, *supra*.

("M&M").[4]  Plaintiffs allege that the brokers used sham appraisals performed by defendant PGP Valuation, Inc., to support the inflated property values.  Plaintiffs purchased all of the properties in a series of independent transactions for a combined $30.3 million in 2004, 2005, and 2006.  The Morabito and Waelti entities at first performed on their leases, some for up to four years, making a total of about $8.1 million in rent payments to Plaintiffs.  The franchisees began having problems making their rent payments in 2006 and 2007, and eventually each breached its lease, leaving more than $59 million in future rent payments unpaid.  Plaintiffs tried to mitigate their losses, but could not find tenants at comparable rents.

Plaintiffs filed suit alleging that each of the defendants had violated RICO, 18 U.S.C. § 1962(c), and that Defendants had collectively violated 18 U.S.C. § 1962(d)'s prohibition on RICO conspiracies, along with related state common law and statutory claims.  The district court dismissed the case under Federal Rule of Civil Procedure 12(b)(6), concluding that Plaintiffs had not met their burden under Rules 8(a) and 9(b) to plausibly allege that Defendants specifically intended to defraud Plaintiffs.  Because the district court dismissed the individual RICO claims, it also dismissed the RICO conspiracy claim against all Defendants.  Finally, after dismissing all of the federal claims, the district court declined

---

[4] The complaint alleges that Marcus & Millichap Real Estate Investment Services, Inc. and Marcus & Millichap Real Estate Investment Brokerage Company are alter egos of the Marcus & Millichap Company.  The complaint also lists a number of individual employees of the M&M entities as individual defendants.  We refer to this group collectively as "M&M" but take no position on the allegations relating to the corporate relationships in this group.  *See* footnote 1*, supra*.

to exercise supplemental jurisdiction over Plaintiffs' state law claims.  Plaintiffs filed a timely notice of appeal.

## II

We review *de novo* the district court's judgment granting a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007).  In reviewing an appeal from a motion to dismiss, all facts are taken from the complaint and construed in the light most favorable to the non-moving party.  *Id.*

## III

Rule 8 requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To meet this requirement, the Supreme Court has held that an "entitlement to relief" requires "more than labels and conclusions . . . .  Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555.  Although "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable," *id.* at 556, plaintiffs must include sufficient "factual enhancement" to cross "the line between possibility and plausibility." *Id.* at 557.[5]  This

---

[5] Rule 9(b) requires that "circumstances constituting fraud" must be alleged with particularity but allows fraudulent intent to be alleged generally.  Federal Rule of Civil Procedure 9(b).  We have held that the plausibility analysis of *Twombly* and *Iqbal* applies equally to Rule 9 as it does to Rule 8.  *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  Accordingly, although the language of Rule 9 poses no barrier in itself to general pleading of fraudulent intent, *Twombly* and *Iqbal*'s pleading standards must still be applied to test complaints that contain claims of fraud.

standard represents a balance between Rule 8's roots in relatively liberal notice pleading and the need to prevent "a plaintiff with a largely groundless claim" from "'tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of settlement value.'" *Id.* at 557–58 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

Establishing the plausibility of a complaint's allegations is a two-step process that is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. First, a court should "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Then, a court should "assume the[] veracity" of "well pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (citation omitted). When considering plausibility, courts must also consider an "obvious alternative explanation" for defendant's behavior. *Id.* at 682 (quoting *Twombly*, 550 U.S. at 567).

We have applied *Twombly* and *Iqbal*'s plausibility standard in two recent cases. In *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), we analyzed the apparent shift in the Supreme Court's analysis of Rule 8 pleading standards, comparing the "more demanding" *Twombly* and *Iqbal* standard to the "more lenient" rule applied in *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002) and *Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam). *Starr*, 652 F.3d at 1216. We noted that in *Swierkiewicz*, the Supreme Court held that "Rule 8(a) establishes a pleading standard without regard to

whether a claim will succeed on the merits. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Starr*, 652 F.3d at 1215 (quoting *Swierkewicz*, 534 U.S. at 514–15). Similarly, we recognized that in *Erickson*, the Supreme Court reversed our sister circuit's determination that a complaint was overly conclusory and held that a relatively sparse complaint satisfied Rule 8(a)'s pleading standards. *Starr*, 652 F.3d at 1215 (citing *Erickson*, 551 U.S. at 94). Despite a potential conflict between the two groups of cases, we concluded that the Supreme Court's precedents established the following principles:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr*, 652 F.3d at 1216. We applied these principles to hold: "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." *Id.* (emphasis in original).

A more recent examination of Rule 8(a) confronted the application of the plausibility standard to a complaint with less factual support than that in *Starr*. *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104 (9th Cir. 2013). We affirmed the dismissal of the complaint in *Century* because, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." 729 F.3d at 1108 (internal quotation marks and citations omitted) (quoting *Iqbal*, 556 U.S. at 678; citing *Twombly*, 550 U.S. at 554). Unlike *Starr*, where the plaintiff's plausible complaint survived a motion to dismiss by offering facts that tended to exclude the defendant's innocuous alternative explanation, we held that the complaint in *Century* established only a "possible" entitlement to relief, and thus could not support further proceedings. *Century*, 729 F.3d at 1108.

## IV

Applying *Twombly*, *Iqbal*, *Starr*, and *Century* to the complaint at issue in this appeal, we conclude that Plaintiffs have not made the kind of factual allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## A

We start with the elements a plaintiff must plead to state a RICO violation. *See Iqbal*, 556 U.S. at 675. The RICO

statute sets out four elements: a defendant must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt. 18 U.S.C. § 1962(c). In addition, the conduct must be (5) the proximate cause of harm to the victim. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496-97 (1985). To show the existence of an enterprise under the second element, plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009). Racketeering activity, the fourth element, requires predicate acts, which in this case are alleged to be mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud, and contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud. *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986). It is this final sub-element, the defendant's specific intent to defraud, that is at issue here.

"In order to prove a violation of 18 U.S.C. § 1341, there must be a showing of a specific intent to defraud. The intent to defraud may be inferred from a defendant's statements and conduct." *United States v. Peters*, 962 F.2d 1410, 1414 (9th Cir. 1992). In the absence of direct evidence of intent, the party asserting fraud must first prove "the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension," and then, "by examining the scheme itself" the court may infer a defendant's specific intent to defraud. *United States v. Green*, 745 F.2d 1205, 1207 (9th Cir. 1984) (internal

quotation marks omitted) (quoting *United States v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir. 1980)).

Plaintiffs' fraud theory requires them to show more than a business deal gone bad for economic and non-fraudulent reasons. They must establish that Defendants had the specific intent to defraud, and Plaintiffs may establish that intent by showing the existence of a plausible fraudulent scheme. "The level of factual specificity needed to satisfy this pleading requirement will vary depending on the context." *Century*, 729 F.3d at 1107 (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008)). When companies engage in sale-leaseback transactions that are facially legitimate, pay rent and operate legitimate businesses for years thereafter, and otherwise act as routine participants in American commerce, a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme.

**B**

We proceed in our analysis by removing conclusory statements of law from the complaint. *Iqbal*, 556 U.S. at 679. Trimmed of "legal conclusions" and "threadbare recitals of a cause of action," *Id.* at 678, Plaintiffs' argument that the alleged scheme reflects an intent to defraud contains two prongs. First, Plaintiffs point to the rapid increase in the price of the properties from the alleged "true market value" at the time of the Morabito or Waelti entities' initial purchase to the prices at the time that the properties were sold to Plaintiffs, and the Plaintiffs' subsequent inability to sell the properties at those higher prices, or to lease the properties at rental rates reflecting those higher prices, after the leases were breached. Second, they argue that Defendants portrayed the real estate

investments as "safe and secure," despite the fact that the tenants were not rated by credit agencies.  We conclude that neither argument contains sufficient factual allegations to state a plausible entitlement to relief.

**1**

The key factual allegation that supports Plaintiffs' first argument is that Defendants sold property worth $11.1 million to Plaintiffs for $30.3 million while spending $8.1 million on rent to maintain the alleged scheme until all properties were sold.  We conclude that this allegation does not create a plausible entitlement to relief for two reasons.

First, although the increase in price is consistent with Defendants' alleged fraudulent intent, it does not tend to exclude a plausible and innocuous alternative explanation. *See Century*, 729 F.3d at 1108.  The alternative explanation in this case comes from Plaintiffs' own complaint: they allege that long-term commercial real estate leases typically support future property sales "at a multiple of the actual market value."  Although the increase here appears large—nearly three times the alleged original true value—Plaintiffs plead no facts that would tend to show that this increase was not typical, appropriate, or the product of legitimate market forces.  Further, relying on our "judicial experience and common sense," *Iqbal*, 556 U.S. at 679, we note that real estate values can be variable, and that fluctuations in prices over a period of years are not necessarily unusual, nor are they conclusive proof of wrong-doing, as changes may reflect market conditions. This is particularly true when, as here, the culminating events that harmed Plaintiffs took place in the midst of a deep national recession that seriously affected the

real estate market.**[6]**  All of the facts Plaintiffs have presented are consistent with both their theory of liability and this innocent alternative, that the recession decreased business viability and property values. Plaintiffs have not met their burden to do "[s]omething more" to "render [their] allegations plausible within the meaning of *Iqbal* and *Twombly*." *Century*, 729 F.3d at 1108.

Second, the complaint alleges no specific facts supporting its conclusion that the properties' "true fair market valu[e]" was just $11.1 million.  The complaint does not cite any documents or sources for this value, nor does it explain the methodology by which this value was derived.  Further, Plaintiffs' complaint alleges that Defendants had purchased the properties from independent third parties (not alleged to be a part of the conspiracy or named as defendants in this case) for about $20.3 million.  Absent factual support showing that the true market value was $11.1 million, and taking into account the evidence in Plaintiffs' own complaint that undermines their allegation that the property was worth only $11.1 million, we decline to accept the conclusory assertions of property values as facts.  *See First Nationwide*

---

**[6]** We take judicial notice of the recession in the US economy from December 2007 to June 2009.  *See W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 399 (1937) ("We may take judicial notice of the unparalleled demands for relief which arose during the recent period of depression and still continue to an alarming extent despite the degree of economic recovery which has been achieved."); *see also* The National Bureau of Economic Research, "U.S. Business Cycle Expansions and Contractions," http://www.nber.org/cycles (establishing the dates of the recession); The Bureau of Labor Statistics, United States Department of Labor, "The Recession of 2007–2009," http://www.bls.gov/spotlight/2012 /recession/pdf/recession_bls_spotlight.pdf (compiling data on employment, consumer spending, and economic output).

*Bank v. Gelt Funding Corp.*, 27 F.3d 763, 770 (2d Cir. 1994) (holding that allegations of a methodologically unreliable appraisal were not sufficient to establish property values as a fact in a RICO complaint).[7]  Removing this conclusory valuation allegation from our consideration of the complaint's factual allegations supports the Defendants' alternative explanation that the changing sale prices reflected not fraud but changing market conditions.  Removal of this allegation shrinks the amount the property values were alleged to have changed over time and establishes that Defendants paid out most of their alleged gains to Plaintiffs in rental payments and other operating expenses required to run the fast food and auto maintenance businesses for up to four years.  Far from establishing a plausible entitlement to relief, Plaintiffs' preferred reading of the complaint requires us to draw "*im*plausible" inferences that Defendants had the specific intent to defraud Plaintiffs.  *Starr*, 652 F.3d at 1216 (emphasis in original).[8]  The Plaintiffs' fraud theory is not plausible when considered in light of the innocent explanation that failure of franchise businesses in making rental payments, and their abandonment of leases, took place in the context of a deep national recession.  We hold the Plaintiffs'

---

[7] Plaintiffs' theory—and its after-the-fact, conclusory property valuations—requires us to believe that Defendants also overpaid for the properties by more than $9 million, a proposition that itself is implausible.

[8] Our conclusion here is not in conflict with *Starr*.  The principle that case establishes is that a tie goes to the plaintiffs when there are multiple plausible theories at the pleadings stage of litigation.  *Starr*, 652 F.3d at 1216–17.  But the problem here is that in the context of Defendants' specific intent to defraud, Plaintiffs' complaint alleges facts that support—at best—a "possible" basis to believe that Defendants specifically intended to defraud, not a "plausible" one.  *See Century*, 729 F.3d at 1108 (distinguishing *Starr*).

fraud theory is not plausible, but we do not consider or make any statement about whether their theory is "probable" or dismiss their complaint because it does not meet a "probability requirement." Rule 8 does not impose such a requirement. *Twombly*, 550 U.S. at 556; *Starr*, 652 F.3d at 1217.

**2**

Plaintiffs also contend that we can infer Defendants' specific intent to defraud from the fact that Defendants allegedly concealed the risky nature of the real estate investments. Plaintiffs contend that their argument that Defendants concealed the risks is supported by the allegation of three sets of facts: 1) that the tenants had not been rated by credit agencies, 2) that Defendants were aware of this, and 3) that Defendants described the investments as "safe and secure" or other similar assertions.

But these facts do not allow us to make the Plaintiffs' preferred inference that Defendants had the necessary specific intent to defraud Plaintiffs. First, the statements by Defendants about the relative security of the investments constitute "puffing" or related expressions of opinion that are common in sales and not actionable as fraud. *See United States v. Gay*, 967 F.2d 322, 328–29 (9th Cir. 1992). Second, for this kind of behavior to support a claim of fraud, Plaintiffs must show "deceitful concealment of material facts," *Bohonus*, 628 F.2d at 1172 (9th Cir. 1980), but the complaint does not allege deceit. There is no allegation that Plaintiffs requested properties with credit-rated tenants, or even requested information about whether the tenants on the properties they were being sold had been so rated. In short, Plaintiffs have not alleged facts sufficient to show "the

existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension," *Green*, 745 F.2d at 1207 (9th Cir. 1984), and without such a showing, we cannot properly infer fraudulent intent.

## V

The complaint purported to allege intentional fraud in the inflation of property values on properties sold to Plaintiffs. However, the complaint's factual allegations do not support a plausible inference that Defendants had the required specific intent to defraud, nor do they tend to exclude the alternative explanation that the transactions were merely a group of business deals gone bad during a deep recession. Because we affirm the dismissal of Plaintiffs' RICO allegations, we also affirm the dismissal of Plaintiffs' allegations of RICO conspiracy. *See Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 368 n.8 (9th Cir. 1992). We affirm the district court's dismissal of this complaint.[9]

**AFFIRMED.**

---

[9] Plaintiffs did not raise the district court's dismissal without prejudice of their state law claims or its denial of their complaint without leave to amend in their briefing to us, so the state law and leave to amend issues are waived. *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005). We express no opinion on whether viable state law claims have been or could be pleaded by Plaintiffs.