
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARIA DE LOS ANGELES GOMEZ; JUAN ELIAS GOMEZ; VACHIK Y. ALVANDI; DOUGLAS ALAN MARKS; SHARON MAUREEN MARKS; EVELIN YANETH RAFT; ROBERTA BARTECK; RONALD BARTECK; FRED SHOKOUFI; LEESHA TAN KELLER; TADEH KESHMESHIAN; IDET KESHMESHIAN; CELARIS ZADORIAN; HERAYR ZAHRABI; SHARON REUVENI, AKA Shawn Reuveni; REUVENI REUVENI; DAVID VALENTINO, | No. 14-55129<br><br>D<br>.C. No. 2:12-cv-08704-GHK-SH<br><br>MEMORANDUM* |
| Plaintiffs - Appellants, | |
| v. | |
| BANK OF AMERICA, N.A., a United States corporation for itself and as successor in interest for Countrywide Bank FSB; COUNTRYWIDE HOME LOANS INC, a New York corporation, DBA America's Wholesale Lender; JOHN PARK, | |
| Defendants - Appellees. | |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Appeal from the United States District Court
for the Central District of California
George H. King, Chief District Judge, Presiding

Submitted February 10, 2016[**]
Pasadena, California

Before: KLEINFELD, McKEOWN, and IKUTA, Circuit Judges.

Plaintiffs sued Bank of America, N.A., successor in interest to Countrywide Bank, FSB, formerly known as Countrywide Bank N.A., Countrywide Home Loans, Inc. (the "Bank Defendants"), and several individual defendants, alleging civil liability for violations of RICO, 18 U.S.C. § 1962(a)–(d), as well as several state causes of action. Their claims are based on damages Plaintiffs suffered when they lost a great deal of money in a Ponzi scheme operated by Kaveh Vahedi—a personal friend to many of the Plaintiffs, and a con-man who promised excellent investment opportunities before taking Plaintiffs' money. After giving Plaintiffs an opportunity to amend their complaint, the district court dismissed their RICO claims against the Bank Defendants with prejudice for failure to state a claim. Plaintiffs appeal the district court's Federal Rule of Civil Procedure 12(b)(6) dismissal and its denial of leave to amend their RICO claims against the Bank Defendants. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

---

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Despite the injustice done to them by Vahedi, they do not state a RICO claim upon which relief can be granted against the Bank Defendants.

We review de novo the district court's judgment granting the motion to dismiss, Eclectic Props. E., LLC v. Marcus & Millchap Co., 751 F.3d 990, 995 (9th Cir. 2014), and we review its denial of leave to amend for an abuse of discretion. United States v. Corinthian Colls., 655 F.3d 984, 995 (9th Cir. 2011).

Though we construe the facts in the complaint in the light most favorable to Plaintiffs, to survive a motion to dismiss under Rule 12(b)(6), Plaintiffs' complaint must to set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In order to sustain their claims, Plaintiffs' factual allegations must "state a claim to relief that is plausible on its face." Id. at 570. RICO claims are subject to both Federal Rule of Civil Procedure 8(a)'s requirement of a short and plain statement, and Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement, so Plaintiffs' complaint must contain adequate factual allegations to plausibly infer that the Bank Defendants, not just Vahedi, specifically intended to defraud them. Eclectic Props., 751 F.3d at

993–94. Additionally, any claim asserted under 18 U.S.C. § 1964(c), which permits persons injured by violations of § 1962 to sue for civil remedies, is only cognizable if the defendant's alleged violation proximately caused the plaintiffs injury. Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461–62 (2006); see also Rezner v. Bayerische Hypo Und Vereinsbank AG, 630 F.3d 866, 873 (9th Cir. 2010) (holding that in order to state a claim under § 1962(c), the plaintiffs must show that the defendants' actions were both a but-for and proximate cause of their injuries).

Plaintiffs lack standing to sue the Bank Defendants under § 1964. To have standing, Plaintiffs must plead (1) that their alleged harm qualifies as injury to their business or property; and (2) that their harm was "by reason of" the RICO violation, which requires Plaintiffs to establish proximate causation. Canyon Cty. v. Syngenta Seeds, Inc., 519 F.3d 969, 972 (9th Cir. 2008).

Plaintiffs claim that the Bank Defendants caused their losses in Vahedi's Ponzi scheme because Countrywide Home Loans described KGV Investments, Inc., Vahedi's company that operated as a licensed mortgage broker, as one of 30,000 "carefully screened" and "carefully selected" nationwide "business

partners." This, in turn, allegedly gave Vahedi the aura of credibility Plaintiffs needed to trust him. These allegations do not connect the alleged racketeering activities of the Bank Defendants, i.e., mail fraud and wire fraud for sending false information indicating that KGV had been "carefully screened" and "carefully selected," with Plaintiffs' decisions to take out loans and invest money with Vahedi. The amended complaint makes clear that Vahedi had Plaintiffs' trust, and as a result Plaintiffs put their money, some obtained through loans and some not borrowed from the Bank Defendants, into Vahedi's Ponzi scheme and subsequently lost that money. Plaintiffs cannot overcome their causation problem with references to fiduciary duties and agency liability.

Plaintiffs have not pleaded facts sufficient to show that the Bank Defendants owed them a fiduciary duty. "Under California law, a lender does not owe a borrower or third party any duties beyond those expressed in the loan agreement, except[] those imposed due to special circumstance." Resolution Trust Corp. v. BVS Dev., 42 F.3d 1206, 1214 (9th Cir. 1994) (citing Nymark v. Heart Fed. Sav. & Loan Ass'n., 283 Cal. Rptr. 53, 56–57 (Cal. Ct. App. 1991)). Special circumstances include where a lender actively participates in the financed enterprise, acting beyond the scope of its "conventional role as a mere lender of

5

money." Nymark, 283 Cal. Rptr. at 56 (citing Wagner v. Benson, 161 Cal. Rptr. 516, 521 (Cal. Ct. App. 1980)). None of Plaintiffs' allegations suggested that the Bank Defendants were participating in the financed enterprise—the Bank Defendants had no ownership interest in Vahedi's companies, and were not soliciting Plaintiffs to invest in their own investments. And Plaintiffs cite no fact for the proposition that selling bundles of mortgages to Wall Street investors was atypical activity for institutions like the Bank Defendants, or had anything to do with Vahedi stealing their money.

Plaintiffs' agency theory does not connect the Bank Defendants with their financial losses. Even if Vahedi were a dual agent under California law by virtue of the loan application materials Countrywide Home Loans sent out to some of the Plaintiffs after they applied for home loans, the Bank Defendants could only be liable to Plaintiffs for Vahedi's actions done within the scope of his agency, and only for actions that were foreseeable from his duties and apparent authority as an agent of the Bank Defendants. Lisa M. v. Henry Mayo Newhall Mem. Hosp., 48 Cal. Rptr. 2d 510, 512–15 (Cal. 1995); see Cal. Civ. Code § 2338.

Plaintiffs' allegations establish that Vahedi's apparent authority only extended to helping the Plaintiffs obtain loans, and advising them about affordability and repayment, disclosing risks, and assisting them with filling out the applicable paperwork. Nothing pleaded by Plaintiffs plausibly suggests the Bank Defendants should have foreseen that Vahedi would use KGV Investments to obtain Plaintiffs' money, borrowed or not.

While we recognize a principal may be liable under § 1964 for acts of its agent that violated § 1962, Brady v. Dairy Fresh Products Co., 974 F.2d 1149, 1154–55 (9th Cir. 1992), that is only true where the agent was acting in the interest of the principal, as opposed to engaging in racketeering activities that harm the principal's interest. Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n, 298 F.3d 768, 775 (9th Cir. 2002). Plaintiffs' own evidence shows Vahedi was acting against the Bank Defendants' interests. Plaintiffs attached records from Vahedi's criminal conviction for defrauding financial institutions. His plea agreement admits to defrauding the Bank Defendants by submitting loan applications listing false assets, income, and occupations. Vahedi has admitted that he was defrauding the Bank Defendants.

7

To the extent that Plaintiffs suggest that they had distinct mortgage fraud injuries stemming from Vahedi's scheme, the district court provided ample opportunity for Plaintiffs to explain what had prevented them from becoming aware of these injuries at the time the loan applications were filed and Plaintiffs did not provide any explanation. Therefore, the district court properly found that RICO's four-year statute of limitations had run on any claims stemming directly from the mortgage fraud. See Pincay v. Andrews, 238 F.3d 1106, 1108–10 (9th Cir. 2001).

Plaintiffs also failed to adequately plead facts supporting the basic elements of each of the four RICO causes of action they allege, and dismissal of their claims was appropriate.

Section 1962(a) provides that it is unlawful "for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest . . . any part of such income . . . in . . . operation of . . . any enterprise." 18 U.S.C. § 1962(a). To sustain their claim for a violation of § 1962(a), Plaintiffs need to allege facts tending to show they were injured by "the use or investment of racketeering income," Nugget Hydroelectric, L.P. v. Pac. Gas

8

and Elec. Co., 981 F.2d 429, 437 (9th Cir. 1992), as opposed to the racketeering activity itself. Though Plaintiffs pleaded they were harmed by Vahedi's investment of their money into various businesses within his scheme, "[r]einvestment of proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation." Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1149 (9th Cir. 2008). Moreover, nothing pleaded suggests Countrywide invested any racketeering proceeds.

Section 1962(b) prohibits the use of improper means to acquire or maintain control over an interest in an enterprise engaged in interstate commerce. 18 U.S.C. § 1962(b). Plaintiffs do not plead that the Bank Defendants acquired or maintained such an enterprise. Plaintiffs being tricked into giving their money to Vahedi was his, not the Bank Defendants', improper means. Though Plaintiffs alleged generally that the Bank Defendants gained control of the alleged RICO enterprise, they pleaded no facts to plausibly support this claim, or explain how the Bank Defendants gained such control through racketeering activity, or how Plaintiffs suffered a distinct injury from the Bank Defendants' purported control of the enterprise.

9

Section 1962(c) prohibits a person employed by or associated with any enterprise engaged in interstate commerce to conduct or participate in the conduct of the enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c). To state a claim for a violation of § 1962(c), Plaintiffs must plead that the Bank Defendants participated in (1) the conduct of (2) an enterprise that affected interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt, and the conduct must have been (5) the proximate cause of harm to the victim. Eclectic Props., 751 F.3d at 997. With respect to the proximate cause element, we have set forth three non-exhaustive factors to consider:

> (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.

Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1168–69 (9th Cir. 2002) (quotations and citation omitted). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to plaintiff's injuries." Anza, 547 U.S. at 461.

The amended complaint reflects that Plaintiffs' injuries were caused by the trust they placed in Vahedi and the money they loaned to him on the basis of his promises. The alleged mail and wire fraud committed by the Bank Defendants, which indicated to potential borrowers that KGV Investments was a reputable mortgage broker that Countrywide Home Loans partnered with, could have influenced some of the Plaintiffs to take out loans on their homes they could not afford. But the pleadings do not plausibly suggest this necessarily led to their decision to trust Vahedi with their money. That point is made clear by the fact that money invested and lost by most, thirteen of the seventeen Plaintiffs victimized by Vahedi's Ponzi scheme, did not even come from loans funded by the Bank Defendants.

Section 1962(d) makes it unlawful to conspire to violate any of the other three subsections of § 1962. 18 U.S.C. § 1962(d). To state such a claim, the pleadings must suggest the Bank Defendants were "aware of the essential nature and scope of the enterprise and intended to participate in it." Baumer v. Pachl, 8 F.3d 1341, 1346 (9th Cir. 1993) (internal quotation marks and citation omitted). Though Plaintiffs pleaded that the Bank Defendants were part of Vahedi's enterprise and had general knowledge about its purpose, none of their allegations

11

plausibly suggest the Bank Defendants had any knowledge of Vahedi's Ponzi scheme or its scope, or that they agreed and intended to participate in it. The facts pleaded were insufficient to infer a conspiracy existed with the Bank Defendants, and the district court properly dismissed this claim. See Baumer, 8 F.3d at 1346–47; see also Howard v. Am. Online Inc., 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.")

Whether to grant leave to amend is in the discretion of the district court. Foman v. Davis, 371 U.S. 178, 182 (1962). When reviewing the district court's decision, we look "to whether the trial court identified and applied the correct legal rule . . . [and] we look to whether the trial court's resolution . . . resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc). The district court reasonably concluded that Plaintiffs' "bloated" amended complaint, which contained seventy more pages than the original 180 page complaint, failed to remedy the pleading deficiencies identified in the original complaint, and amendment would be futile. It was reasonable for the court to determine that Plaintiffs' 253 page amended complaint

contained all the relevant allegations Plaintiffs could make.   Even after being advised of the deficiencies, Plaintiffs still failed to adequately plead that the acts of the Bank Defendants proximately caused their losses from Vahedi's Ponzi scheme. See United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO, 770 F.3d 834, 845 (9th Cir. 2014).   The district court did not abuse its discretion in denying leave to amend.   Id.

**AFFIRMED**.