NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUL 28 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

TAMARA MOORE; et al.,

Plaintiffs-Appellants,

v.

MARS PETCARE US, INC.; et al.,

Defendants-Appellees.

No.    18-15026

D.C. No. 3:16-cv-07001-MMC

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, District Judge, Presiding

Argued and Submitted July 19, 2019
San Francisco, California

Before:  M. MURPHY,[**] PAEZ, and RAWLINSON, Circuit Judges.

Plaintiffs Tamara Moore and five other California residents (collectively,

"Plaintiffs") appeal the district court's dismissal of their federal antitrust claim

brought under Section 1 of the Sherman Act, 15 U.S.C. § 1.  We have jurisdiction

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Michael R. Murphy, United States Circuit Judge for
the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

under 28 U.S.C. § 1291, and, reviewing de novo, we affirm.[1]

We agree with the district court that Plaintiffs have not adequately pleaded that defendants—a collection of pet food manufacturers, veterinary clinic chains, and a pet goods retailer (collectively, "Defendants")[2]—engaged in an unlawful conspiracy. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007); *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193–97 (9th Cir. 2015); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008). Plaintiffs fail plausibly to allege—as they must do to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)—that Defendants entered into an "agreement" that unreasonably restrained trade. *Twombly*, 550 U.S. at 553; *Musical Instruments*, 798 F.3d at 1191.

As an initial matter, Plaintiffs lack direct evidence, as they conceded in the district court, that Defendants conspired to perpetuate a fraudulent scheme of imposing a prescription requirement to buy certain pet food produced and

---

[1] In a separately filed opinion, we address Plaintiffs' state law claims alleging violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.; California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.; and California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq.

[2] Specifically, Defendants consist of pet food manufacturers, Mars Petcare US, Inc. and Royal Canin U.S.A., Inc. (collectively "Mars"), Nestle Purina Petcare Company ("Purina"), and Hill's Pet Nutrition, Inc. ("Hill's") (collectively, "Defendant Manufacturers"); veterinary clinic chains, Medical Management International, Inc. d/b/a Banfield Pet Hospital ("Banfield") and BluePearl Vet, LLC ("Blue Pearl"); and pet goods retailer, PetSmart, Inc. ("PetSmart").

marketed by Defendant Manufacturers.  On appeal, Plaintiffs have distanced themselves from their concession and now argue that Defendants entered into a "combination."  That assertion is, at best, conclusory.  *See Twombly*, 550 U.S. at 557.

Plaintiffs also fail to allege enough so-called "plus factors" beyond parallel business behavior to show a "meeting of the minds."  *Musical Instruments*, 798 F.3d at 1193 (quoting *Twombly*, 550 U.S. at 557, 560).  They appear to allege, for example, that Defendants shared a common motive—sustaining higher prices of prescription pet food—to conspire with one another.  But we have rejected common motive as a plus factor to show an agreement, *id*. at 1194–95, particularly when there are "obvious alternative explanation[s]" for Defendants' actions or conduct, *see Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)).  Plaintiffs' allegations provide several alternative explanations: they allege that there are "significant barriers to entry" in the prescription pet food market because it requires "substantial research and development expertise and investment, the ability to reach veterinary clinics through a separate sales force and distribution network," and "compliance with FDA regulatory requirements and processes."  The higher costs of prescription pet food may therefore be a market reflection of

3

the high amount of investment necessary to develop such products and enter the market.

Plaintiffs also argue the Defendant Manufacturers acted against their self-interest by not whistle-blowing on each other and by responding in the same manner to the FDA's draft Compliance Policy Guide ("CPG") and final CPG. We disagree. The FDA encourages the role of the vet in the prescription pet food process, and the FDA has not yet brought actions against Defendant Manufacturers' marketing practices despite their alleged violations of three of the listed conditions in the FDA's final CPG. Similarly, Defendants' response to the draft CPG and continued behavior after the final CPG do not seem illogical given that other professional organizations in the field communicated to the FDA their support for the role of vets in supervision over consumption of prescription pet food. *See Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1130 (9th Cir. 2015).

The main problem with Plaintiffs' conspiracy theory, however, is that they do not explain or account for the role of other players in the market. *See Musical Instruments*, 798 F.3d at 1198. For instance, Plaintiffs acknowledge that three other companies produce prescription pet food for a much smaller share of the market, but do not allege whether those competitors market their product in a manner similar to Defendant Manufacturers, charge similarly higher prices, or

4

require a prescription as a condition of purchase. Plaintiffs' theory about Banfield and Blue Pearl's role in the prescription process also overlooks the fact that they constitute only seven percent of vets across the country, leaving over ninety percent of other vets who may also prescribe the prescription pet food that Defendant Manufacturers make. Plaintiffs acknowledge that PetSmart and Banfield accept prescriptions from vets outside of their network. Given that these other players also produce, sell, and prescribe prescription pet food, their behavior—insofar as it is like that of Defendants—provides a market-based reason for what Plaintiffs allege to be a conspiracy.

Thus, we affirm the district court's conclusion that Plaintiffs' allegations "have not nudged their [Sherman Act] claim[] across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570.

**AFFIRMED.**