**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE: CENTURY ALUMINUM COMPANY SECURITIES LITIGATION, | No. 11-15599 |
| | D.C. No. 3:09-cv-01001-SI |
| ERIC PETZSCHKE, individually and on behalf of all others similarly situated; STUART WEXLER, lead plaintiff for the Securities Act claims; CORY MCCLELLAN; PETER ABRAMS; CHRIS MCNULTY, *Plaintiffs-Appellants*, | |
| v. | ORDER AND AMENDED OPINION |
| CENTURY ALUMINUM COMPANY; LOGAN W. KRUGER; MICHAEL A. BLESS; STEVE SCHNEIDER; JOHN C. FONTAINE; JACK E. THOMPSON; PETER C. JONE; JOHN P. O'BRIEN; WILLY R. STROTHOTTE; JARL BERNTZEN; CREDIT SUISSE SECURITIES (USA) LLC; MORGAN STANLEY & CO., *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted
August 8, 2012—San Francisco, California

Filed January 2, 2013
Amended April 17, 2013

Before: Consuelo M. Callahan and Paul J. Watford, Circuit
Judges, and James K. Singleton, Senior District Judge.[*]

Opinion by Judge Watford

## SUMMARY[**]

### Securities Fraud

The panel affirmed the dismissal for lack of statutory standing of an action under § 11 of the Securities Act of 1933, alleging that a company's securities were issued under a materially false or misleading registration statement.

The panel held that the plaintiffs did not adequately allege that their aftermarket shares were traceable to a secondary offering in connection with which the company issued a prospectus supplement treated as part of the company's registration statement. The panel held that the plaintiffs' allegations did not give rise to a reasonable inference that

---

[*] The Honorable James K. Singleton, Senior United States District Judge for the District of Alaska, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

their shares were traceable to the secondary offering because the allegations also were consistent with the shares having come from a previously issued pool.

The panel stated that the district court should have addressed defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), rather than Rule 12(b)(1), because failure to allege statutory standing results in failure to state a claim on which relief can be granted, not the absence of subject matter jurisdiction. The panel affirmed on the basis that dismissal was proper under Rule 12(b)(6).

## COUNSEL

Francis M. Gregorek, Betsy C. Manifold, Rachele R. Rickert, and Patrick M. Moran (argued), Wolf Haldenstein Adler Freeman & Herz LLP, San Diego, California, for Plaintiffs-Appellants.

Bruce A. Ericson, Kevin M. Fong, and Jeffrey S. Jacobi, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California, for Defendants-Appellees Century Aluminum Company, Logan W. Kruger, John C. Fontaine, Jack E. Thompson, Peter C. Jones, John P. O'Brien, Willy R. Strothotte, Jarl Berntzen, Robert E. Fishman, Catherine Z. Manning, Steve Schneider and Michael A. Bless.

Robert P. Varian (argued) and Stephen M. Knaster, Orrick Herrington & Sutcliffe LLP, San Francisco, California, for Defendants-Appellees Credit Suisse Securities (USA) LLC and Morgan Stanley & Co. LLC.

**ORDER**

The opinion filed on January 2, 2013, and published at 704 F.3d 1119, is amended as follows:

At 704 F.3d at 1123, after the paragraph ending with the phrase, <. . . came from the pool of previously issued shares.>, insert the following as a new paragraph:

<This holding is consistent with our opinion in *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), where there were two *plausible* explanations in contention. *Id.* at 1216. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, *both of which are plausible*, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Id.* (emphasis added). Here, however, plaintiffs' explanation is merely *possible* rather than plausible. To render their explanation plausible, plaintiffs must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation. *See Iqbal*, 556 U.S. at 678. The plaintiff in *Starr* did so. He alleged facts which, accepted as true, tended to exclude the possibility that the defendant was ignorant of the unconstitutional conduct of his subordinates (the competing alternative explanation for why the defendant allegedly took no action to stop that misconduct). *See Starr*, 652 F.3d at 1216. Plaintiffs have not offered allegations of this nature here.>

With this amendment, the panel votes to deny the petition for panel rehearing. Judges Callahan and Watford vote to deny the petition for rehearing en banc, and Judge Singleton so recommends. The full court has been advised of the petition for rehearing en banc and no judge has requested a

vote on whether to rehear the matter en banc.  Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc, filed January 16, 2013, are DENIED.  No further petitions for rehearing or for rehearing en banc will be accepted.

---

**OPINION**

WATFORD, Circuit Judge:

Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, provides a cause of action to any person who buys a security issued under a materially false or misleading registration statement.  Plaintiffs need not have purchased shares in the offering made under the misleading registration statement; those who purchased shares in the aftermarket have standing to sue provided they can trace their shares back to the relevant offering.  *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1080 (9th Cir. 1999); *Lee v. Ernst & Young, LLP*, 294 F.3d 969, 978 (8th Cir. 2002).  When all of a company's shares have been issued in a single offering under the same registration statement, this "tracing" requirement generally poses no obstacle.  *Hertzberg*, 191 F.3d at 1082.  But when a company has issued shares under more than one registration statement, the plaintiff must prove that her shares were issued under the allegedly false or misleading registration statement, rather than some other registration statement.  *Id.* at 1080 n.4.

This case involves the latter scenario. Plaintiffs purchased shares in defendant Century Aluminum Company at the end of January 2009. In March 2009, shortly after Century Aluminum restated its cash flows from operating activities, plaintiffs sued the company (and others) under § 11.[1] Plaintiffs allege that the shares they purchased were issued under a materially false and misleading prospectus supplement dated January 28, 2009, which is treated as part of the company's registration statement for purposes of § 11. Century Aluminum issued the prospectus supplement in connection with a secondary offering of 24.5 million shares of the company's common stock. When the secondary offering commenced, more than 49 million shares of Century Aluminum common stock were already in the market. To prevail, plaintiffs would need to prove that the shares they purchased came from the pool of shares issued in the secondary offering, rather than from the pool of previously issued shares.

Plaintiffs could satisfy this requirement in one of two ways. First, plaintiffs could prove that they purchased their

---

[1] Section 11 provides in relevant part:

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue [specified defendants].

15 U.S.C. § 77k(a).

shares directly in the secondary offering itself. Such proof would obviously eliminate any questions about the lineage of plaintiffs' shares. Plaintiffs are not arguing here, however, that they bought directly in the secondary offering; they concede that they purchased in the aftermarket. (The Third Amended Complaint acknowledges that plaintiffs did not buy their shares directly from the underwriters, and none of the plaintiffs bought shares at the offering price of $4.50 per share.)

Second, plaintiffs could prove that their shares, although purchased in the aftermarket, can be traced back to the secondary offering. *See Joseph v. Wiles*, 223 F.3d 1155, 1159 (10th Cir. 2000). That is easier said than done. It would require plaintiffs to trace the chain of title for their shares back to the secondary offering, starting with their own purchases and ending with someone who bought directly in the secondary offering. Courts have long noted that tracing shares in this fashion is "often impossible," because "most trading is done through brokers who neither know nor care whether they are getting newly registered or old shares," and "many brokerage houses do not identify specific shares with particular accounts but instead treat the account as having an undivided interest in the house's position." *Barnes v. Osofsky*, 373 F.2d 269, 271–72 (2d Cir. 1967). Though difficult to meet in some circumstances, this tracing requirement is the condition Congress has imposed for granting access to the "relaxed liability requirements" § 11 affords. *Abbey v. Computer Memories, Inc.*, 634 F. Supp. 870, 875 (N.D. Cal. 1986); *see Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 496 (5th Cir. 2005).

The question raised by this appeal is whether plaintiffs have adequately alleged that their shares are traceable to the

secondary offering. Plaintiffs argue that it was enough for them to allege, without more, that they "purchased Century Aluminum common stock directly traceable to the Company's Secondary Offering." Some district courts have held that this allegation suffices,[2] and before *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), it probably did. But *Iqbal* and *Twombly* moved us away from a system of pure notice pleading. *See* 5 Charles Alan Wright et al., Federal Practice and Procedure § 1216, at 71 (Supp. 2012). In addition to providing fair notice, the complaint's allegations must now suggest that the claim has at least a plausible chance of success. As *Iqbal* put it, the complaint must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The level of factual specificity needed to satisfy this pleading requirement will vary depending on the context. *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). For example, alleging that the plaintiff's shares are "directly traceable" to the offering in question might well suffice, even without "further factual enhancement," *Twombly*, 550 U.S. at 557, when all of the company's shares were issued in a single offering under a single registration statement. *See Joseph*, 223 F.3d at 1160. In that context, alleging that the plaintiff's shares are directly traceable to the offering in question states a claim "that is plausible on its face." *Twombly*, 550 U.S. at 570. No further factual enhancement is needed because by

---

[2] *See, e.g.*, *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 372–73 (S.D.N.Y. 2011); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 401 (D. Md. 2004); *In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1171–72 (C.D. Cal. 2003).

definition *all* of the company's shares will be directly traceable to the offering in question.  *See DeMaria v. Andersen*, 318 F.3d 170, 176 (2d Cir. 2003).

When a company has issued shares in multiple offerings under more than one registration statement, however, a greater level of factual specificity will be needed before a court can reasonably infer that shares purchased in the aftermarket are traceable to a particular offering.  Making this determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  As noted earlier, experience and common sense tell us that when a company has offered shares under more than one registration statement, aftermarket purchasers usually will *not* be able to trace their shares back to a particular offering.  Thus, in this case, plaintiffs had to allege facts from which we can reasonably infer that their situation is different.  Standing alone, the conclusory allegation that plaintiffs "purchased Century Aluminum common stock directly traceable to the Company's Secondary Offering" does not allow us to draw a reasonable inference about anything because it is devoid of factual content.

Plaintiffs say they have offered further factual specificity, and point to allegations regarding the dates on which and the prices at which they purchased their shares, as well as allegations concerning the trading volume of Century Aluminum stock on certain dates.  For example, one of the plaintiffs allegedly purchased 5,000 shares of Century Aluminum common stock on January 28, 2009, at $4.56 per share, and 3,000 shares on January 30, 2009, at $3.56 per share.  (The complaint contains similar allegations for the other named plaintiffs.)  In addition, the complaint alleges a

sharp spike in trading volume and a sharp drop in price of Century Aluminum's stock between January 28 and 30, 2009, movements that occurred, plaintiffs say, because the underwriters of the secondary offering "began flooding the market with Century Aluminum common stock that they had purchased in the Secondary Offering."

These allegations do not give rise to a reasonable inference that plaintiffs' shares are traceable to the secondary offering. Accepting the allegations as true, plaintiffs' shares could have come from the secondary offering, but the "obvious alternative explanation" is that they could instead have come from the pool of previously issued shares. *Twombly*, 550 U.S. at 567. Plaintiffs' allegations are consistent with their shares having come from either source. When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are "merely consistent with" their favored explanation but are also consistent with the alternative explanation. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, *see Twombly*, 550 U.S. at 554, in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*. Here, plaintiffs' allegations remain stuck in "neutral territory," *Twombly*, 550 U.S. at 557, because they do not tend to exclude the possibility that their shares came from the pool of previously issued shares.

This holding is consistent with our opinion in *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), where there were two *plausible* explanations in contention. *Id.* at 1216. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, *both of which are*

*plausible*, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Id.* (emphasis added). Here, however, plaintiffs' explanation is merely *possible* rather than plausible. To render their explanation plausible, plaintiffs must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation. *See Iqbal*, 556 U.S. at 678. The plaintiff in *Starr* did so. He alleged facts which, accepted as true, tended to exclude the possibility that the defendant was ignorant of the unconstitutional conduct of his subordinates (the competing alternative explanation for why the defendant allegedly took no action to stop that misconduct). *See Starr*, 652 F.3d at 1216. Plaintiffs have not offered allegations of this nature here.

Plaintiffs argue that the allegations with respect to at least one of the named plaintiffs, Peter Abrams, are sufficient to meet the plausibility standard. As to Abrams, the Third Amended Complaint alleges that he directed his broker to purchase Century Aluminum shares in the secondary offering and that his broker executed the purchase through Citigroup, which at all relevant times was involved in a joint venture with Morgan Stanley (one of the underwriters of the secondary offering) "whereby the two entities were indistinguishable." Plaintiffs argue that these allegations create a reasonable inference that at least Abrams's shares came from the secondary offering.

Even accepting these allegations as true, we cannot reasonably infer that Abrams's shares are traceable to the secondary offering. The allegations are again consistent with that possibility, but they are also consistent with Citigroup having filled the order with previously issued shares it was holding. Absent something more, such as an allegation that

Citigroup held *only* shares issued in the secondary offering, these allegations are insufficient to withstand a motion to dismiss.

While we do not believe plaintiffs' allegations are adequate under *Iqbal* and *Twombly*, we agree with plaintiffs that the district court erred by considering extrinsic evidence when ruling on defendants' motion to dismiss. The district court suggested that it could consider such evidence because plaintiffs' failure to plead the traceability of their shares would deprive them of "standing," which in turn would deprive the court of subject matter jurisdiction. Accordingly, the court appeared to grant defendants' motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, rather than Rule 12(b)(6).

Dismissal for lack of subject matter jurisdiction would have been appropriate if plaintiffs had not adequately alleged Article III standing. But that was not the case here. Plaintiffs alleged that they purchased shares whose value had been inflated by materially false and misleading statements in the January 2009 prospectus supplement, and that they suffered an injury-in-fact when the value of those shares declined after the truth was revealed. Plaintiffs suffered that alleged injury whether their shares came from the secondary offering or the pool of previously issued shares, since false or misleading statements in the prospectus supplement would likely "affect the price of shares already issued to almost the same extent as those of the same class about to be issued." *Barnes*, 373 F.2d at 271. Plaintiffs' alleged injury was directly traceable to defendants' conduct (issuance of the allegedly false and misleading prospectus supplement) and would be redressed by the relief plaintiffs sought (an award of money damages). Nothing more was needed to allege Article III standing here.

*See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012); *Levine v. AtriCure, Inc.*, 594 F. Supp. 2d 471, 476 (S.D.N.Y. 2009).

Plaintiffs' failure to plead the traceability of their shares means they lack *statutory* standing under § 11, but failure to allege statutory standing results in failure to state a claim on which relief can be granted, not the absence of subject matter jurisdiction. *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 977–78 (9th Cir. 2012); *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907 n.4 (9th Cir. 2011). The district court should therefore have addressed defendants' motion to dismiss under Rule 12(b)(6), not Rule 12(b)(1).

Notwithstanding this error, we may affirm if dismissal was proper under Rule 12(b)(6), *see Harris v. Amgen, Inc.*, 573 F.3d 728, 732 n.3 (9th Cir. 2009); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1172–73 (9th Cir. 2004), and here it was. Even without considering the extrinsic evidence defendants submitted, plaintiffs' allegations fall short of what *Iqbal* and *Twombly* require for the reasons given above. The fact that more than 49 million shares of Century Aluminum common stock were already in the market at the time of the secondary offering was not alleged in plaintiffs' complaint, but it is a fact not subject to reasonable dispute and was included in the January 2009 prospectus supplement, which plaintiffs incorporated into the complaint by reference. The district court properly took judicial notice of this document and plaintiffs did not contest its accuracy with respect to the number of shares outstanding at the time of the secondary offering. That fact could therefore be considered in resolving

defendants' motion under Rule 12(b)(6). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**AFFIRMED.**