Kevin Mahar, Mitchell West, Plaintiff,

against
General Electric Company, Jeffrey Immelt, Jeffrey Bornstein, Jan Hauser, John Flannery, Douglas Warner, KPMG LLP, Defendant.


653648/2018

For Plaintiffs:
Glancy Prongay & Murray LLP
712 Fifth Avenue, 31st Floor
New York, NY 10019
The Rosen Law Firm, P.A.
275 Madison Avenue, 34th Fl. 
New York, NY 10016
For Defendants:
Latham & Watkins, LLP
885 Third Avenue, Suite 1000
New York, NY 10022
Wilkie Farr Gallagher LLP
787 Seventh Avenue
New York, NY 10019


Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 005) 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 145, 152, 153 were read on this motion to/for DISMISS
The following e-filed documents, listed by NYSCEF document number (Motion 006) 126, 127, 128, 129, 130, 131, 132, 133, 134, 146, 149, 150, 151, 154 were read on this motion to/for DISMISS
General Electric Company (GE), Jeffrey Immelt, Jeffrey Bornstein, Jan Hauser, John Flannery and Douglas Warner's (collectively, the GE Defendants), motion (Mtn. Seq. 005) to dismiss for lack of standing or, in the alternative, seeking a stay in respect of the prior filed federal action (the Federal Action) captioned Sjunde Ap-Fonden v General Electric Co., No. 17-[*2]cv-08457 (SD NY) is granted solely to the extent that a stay is granted. KPMG LLP's motion (Mtn. Seq. 006) to dismiss for failure to state a claim pursuant to CPLR § 3211(a)(7) is denied without prejudice and deemed held in abeyance pending the lifting of the stay.
THE RELEVANT FACTS AND CIRCUMSTANCES
The plaintiffs assert claims under Sections 11, 12(a)(2) and (15) of the Securities Act of 1933 (the 1933 Act) on behalf of themselves and a putative class of investors who participated in the GE Direct Purchase and Dividend Reinvestment Plan known as "GE Stock Direct" (the Plan), which allowed investors to purchase shares of General Electric Company (GE) common stock through a plan administrator (the Plan Administrator) (Amend. Compl., ¶¶ 1, 4, 53, 65). In connection with the Plan, on November 7, 2014, GE registered 75 million shares of common stock and designated Computershare Trust Company, N.A. (Computershare) as the transfer agent through which investors actually acquired their shares (Form S-3 Registration Statement Excerpt, McDonough Aff., Ex. 6, NYSCEF Doc. No. 120). Computershare was authorized to purchase shares either directly from GE as a new issue or held in its treasury or the public markets in privately negotiated transactions (id. at 7). In connection with the Plan, pursuant to a Prospectus Supplement (to Prospectus dated February 29, 2016) (the 2017 Prospectus Supplement), on November, 6, 2017, GE registered 25 million shares of common stock and designated Wells Fargo Shareholder Services as the Plan Administrator (id., ex. 7, NYSCEF Doc. No. 121) . As the Plan documents make clear:
The Plan Administrator may buy newly issued shares directly from GE or shares of GEstock held in our treasury, which are shares of GE stock previously sold into the public markets and later repurchased by us. The Plan Administrator may also buy shares in the public markets or in privately negotiated transactions.
(id., p. S-2.)
In accordance with 17 CFR § 230.405, the 2017 Prospectus Supplement indicates that if the Plan Administrator purchases shares from GE, the price will be the same as otherwise available in the market place:
If the Plan Administrator buys your shares, either as newly issued shares or shares from our treasury, the share price will be the average of the high and low prices on the NYSE Composite Index for GE stock on the date of purchase.
If the Plan Administrator buys your shares in the public markets or in privately negotiated transactions, the share price will be the weighted average price of all shares purchased for the weekly crediting to Plan accounts. Any applicable brokerage fees will be paid by us and may be considered income to you. (id.)
As set forth in the Consolidated Amended Class Action Complaint (the Amended Complaint), the plaintiffs purchased their GE common stock through the Plan between July 20, 2015 and July 19, 2018, both dates inclusive (the Class Period) (id., ¶ 1). GE solicits investors for the Plan on its website by offering that the Plan "enables investors to buy shares of GE common stock directly from GE" (id., ¶ 2, n. 1). The plaintiffs here "purchased GE common stock during the Class Period pursuant to [GE's] registration statements and prospectus directly from [GE] as part of the [Stock Direct] Plan" (id., ¶ 4). The plaintiffs allege that GE's (i) 2014 S-3, 2014 Prospectus, (ii) 2016 S-3, 2016 Prospectus, and (iii) 2017 Prospectus Supplement (collectively, the Registration Documents) were materially misleading in violation of the 1933 Act because GE improperly recorded certain revenue, overstated its earnings and "incorporated materially false and/or misleading quarterly and annual reports" that "failed to [*3]timely increase its reserves for its LTC reinsurance business as required under state insurance regulations and GAAP, and failed to properly account for LTSAs [long term services agreements]" (Amend. Compl., ¶¶ 141, 143, 144). As such, the plaintiffs assert strict liability and negligence claims under Sections 11, 12, and 15 of the 1933 Act against the GE Defendants and its accountant KPMG. As further discussed below, the plaintiffs are also proceeding in the Federal Action brought pursuant to the Securities Exchange Act of 1934 (the 1934 Act). For the avoidance of doubt, the federal courts have exclusive jurisdiction over claims brought pursuant to the 1934 Act, and an action brought pursuant to the 1933 Act in state court can not be removed to federal court (Cyan, Inc. v Beaver County Empl. Retirement Fund, 138 S Ct 1061 [2018]).
The GE Defendants (Mtn Seq. 005) argue that the Amended Complaint should be dismissed because the plaintiffs lack standing to bring their 1933 Act claims, and, in the alternative, argue that this case should be stayed pending adjudication of the Federal Action and KPMG (Mtn. Seq. 006) argues that the Amended Complaint should be dismissed pursuant to CPLR § 3211(a)(7) for failure to state a claim.
DISCUSSION
Congress enacted the 1933 Act following the stock market crash of 1929 to promote honest business practices in the securities markets. The 1933 Act, in which Congress created private rights of action in connection with the initial public offering of securities, "protects investors by ensuring that companies issuing securities make a full and fair disclosure of information relevant to a public offering" (Omnicare, Inc. v Laborers Dist. Council Const. Indus., 135 S Ct 1318, 1323 [2015] [internal quotation and citation omitted]). As further discussed below, Sections 11 and 12 of the 1933 Act impose "strict liability for material misstatements contained in registered securities offerings" (NECA-IBEW Health & Welfare Fund v Goldman Sachs & Co., 693 F3d 145, 148 [2d Cir 2012]). More specifically, "Section 11 applies to registration statements, while Section 12(a)(2) covers prospectuses and oral communications" (In re Wachovia Equity Sec. Litig., 753 F Supp 2d 326 [SD NY 2011]).
I. The Plaintiffs have standing to bring claims under Section 11 of the 1933 Act
Section 11 provides in relevant part:
In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security [emphasis added] (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may ... sue [enumerated persons and entities].
(15 USC § 77k[a]).
In order to state a claim pursuant to Section 11, a plaintiff must allege that:
(1) he purchased a registered security either directly from the issuer or in the aftermarket following the offering; (2) the defendant participated in the offering in the manner specified by the statute; and (3) the registration statement 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading (In re Wachovia Equity Sec. Litig., 753 F Supp 2d at 367).
Section 11 claims also contain a statutory standing requirement as Section 11 expressly limits recovery only to "any person acquiring such security [emphasis added]" under the [*4]registration statement (15 USC § 77k[a]). This requirement is generally referred to as the "tracing requirement." Where a company has issued shares under multiple registration statements as GE has here, the "'statutory standing' inquiry become more complicated:" an action "may be maintained only by those who purchase securities that are the direct subject of the prospectus and registration statement," and a plaintiff must prove that his shares were issued under the allegedly false or misleading registration statement (In re Ariad Pharm., Inc. Sec. Litig., 842 F3d 744, 755 [1st Cir. 2016], citing Plumbers' Union Local No. 12 Pension Fund v Nomura Asset Acceptance Corp., 632 F3d 762, 768 n 5 [1st Cir 2011] and In re Century Aluminum Co. Sec. Litig., 729 F3d 1104 [9th Cir 2013]).
Relying primarily on The Hemmer Group v Southwest Water Co. (663 Fed Appx 496 [9th Cir 2016]), the GE Defendants argue that this action must be dismissed because the plaintiffs do not have standing to assert their claims as they cannot establish that the shares they purchased were issued in connection with the allegedly misleading Registration Documents that they seek to challenge—i.e., they cannot "trace" their shares to the allegedly materially misleading Registration Documents both because the shares were purchased not from GE but instead from the Plan Administrator and also because the Plan Administrator was permitted to purchase any of the pool of "billions of previously registered shares available in the market" (Def. Supp. Memo., p. 12, NYSCEF Doc. No. 113). In making this argument, the GE Defendants' rely on the fact that per the Plan documents, the Plan Administrator "buys the shares for each Plan participant's account" and the "Plan administrator could technically obtain shares for the Plan from GE or purchase GE common stock in the open market" (Amend. Compl., ¶¶ 65, 85, n. 13). The argument, however, misses the point.
As an initial matter, the court notes that The Hemmer Group as a Ninth Circuit decision is not controlling authority on this court. In addition, the procedural posture of The Hemmer Group is significantly different. In The Hemmer Group, the Ninth Circuit affirmed the district court's dismissal for lack of standing on summary judgment (i.e., and not on a motion to dismiss — the instant motion — for which an entirely different standard applies) and expressly relied on the district court's finding"that the shares owned by the Hemmer Group were part of a fungible mass of SouthWest shares held by SouthWest's transfer agent [which] included shares from multiple offerings" (id. at 498). Based on this finding, the court held that "the Hemmer Group could not demonstrate that its shares originated from the relevant registration statement" and, thus, lacked standing to pursue its Section 11 claim (id.). That type of finding does not necessarily flow from the well-pled facts in the plaintiffs' Amended Complaint which this court must take as true for purposes of the instant motion. Thus, the precise holding of The Hemmer Group does not mandate dismissal, nor does that precise holding of the 9th Circuit's decision necessarily support the broader reading asserted by the GE Defendants, who argue that The Hemmer Group stands for the proposition that Section 11 standing cannot be established by a plaintiff who acquired stock pursuant to a dividend and reinvestment plan administered on behalf of the issuer which permits the purchase of stock that may come from "a fungible mass" of previously issued stock. To the extent that the GE Defendants urge acceptance of this broader application of The Hemmer Group, this court declines to do so.
Stock dividend and reinvestment programs are offerings of securities issued pursuant to a registration statement. 17 CFR § 230.415(a)(1)(ii) Delayed or Continuous Offering and Sale of Securities (Rule 415) provides:
(a) Securities may be registered for an offering to be made on a continuous or delayed [*5]basis in the future. Provided, That:
(1) The registration pertains only to:
(ii) Securities which are to be offered and sold pursuant to a dividend or interest reinvestment plan or an employee benefit plan of the registrant
Here, the common stock was offered to the plaintiffs by the issuer and the plaintiffs obtained their shares from GE pursuant to the Plan that GE advertises on its website (i.e., not on the website of the Plan Administrator) and where the Plan materials explain that: "GE has registered the offering of GE shares through the Plan with U.S. Securities and Exchange Commission pursuant to the Securities Act of 1933" (Amend. Compl., Ex. A). The fact that a security may be historic (i.e., previously issued pursuant to a prior registration statement) does not forever immunize it from being subject to a Section 11 claim if the security is subsequently reacquired by the issuer, or for the benefit of the issuer, and then offered in connection with allegedly materially misleading statements. Under the circumstances, the relevant inquiry is one of timing — i.e., whether the plaintiffs purchased securities contemporaneously with, and traceable to, the allegedly materially misleading Registration Documents. As the plaintiffs allege that they did, the plaintiffs have sufficiently alleged Section 11 standing to survive a motion to dismiss.
Put another way, the plaintiffs allege that they purchased their stock pursuant to GE's Plan and based on the allegedly misleading Registration Documents. The fact that a Plan Administrator was involved is of no moment. It is the same as if GE had bought the stock itself and reissued the stock pursuant to the Registration Documents — which the Plan documents expressly permitted, as described above. As the GE Defendants point out, the Plan Administrator purchases the securities, not for its own account (as in a third-party arm's length transaction), but in connection with GE's Plan and for the plaintiffs. In other words, whether handled by the Plan Administrator who was retained by GE and compensated by GE or by GE itself, pursuant to Rule 415, it is necessarily an offering of a stock pursuant to the Registration Documents. Undeniably, the plaintiffs purchased the stock pursuant to the Plan and based on the allegedly materially misleading Registration Documents. To the extent that the GE Defendants argue that this creates an exception to the tracing requirement, the court disagrees. It is an offering of securities on behalf of GE and the tracing requirement is ipso facto met if the plaintiffs purchased pursuant to the Plan. As such, there is Section 11 standing.
II. The Plaintiffs have standing to bring claims under Section 12 of the 1933 Act
Section 12 imposes liability on any person who offers or sells securities by means of a prospectus containing material misstatements. It provides:
(a) In general
Any person who—
(1) offers or sells a security in violation of section 77e of this title, or
(2) offers or sells a security ... by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus [emphasis added] or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable ... to the person purchasing such [*6]security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.
(15 USC § 77l [a][2]).
Section 12(a)(2) provides redress where the securities at issue were sold pursuant to a prospectus or oral communication that contained material misstatements or omissions (In re Morgan Stanley Info. Fund Sec. Litig., 592 F3d 347, 359 [2d Cir 2010]). However, "[w]hereas the reach of Section 11 is expressly limited to specific offering participants, the list of potential defendants in a section 12(a)(2) case is governed by a judicial interpretation of section 12 known as the 'statutory seller' requirement" (id., citing Pinter v Dahl, 486 US 622, 643-47 & n. 21 [1988]; and Wilson v Saintine Exploration & Drilling Corp., 872 F2d 1124, 1125-26 [2d Cir 1989]). To be considered a "statutory seller," a defendant must have either "(1) passed title, or other interest in the security, to the buyer for value, or (2) successfully solicited the purchase of a security, motivated at least in part by a desire to serve his own financial interests or those of the securities' owner" (id., [internal quotation omitted, citing Pinter v Dahl, 486 US 622, 647 [1988]). The GE Defendants argue that the plaintiffs did not purchase their common stock directly from GE, they purchased it from the Plan Administrator, and, as such, do not have standing.
[T]o establish standing under Section 12(a), Plaintiffs must allege that they 'directly purchased the securities' from a statutory seller in a public offering. Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., 714 F. Supp. 2d 475, 484 (S.D.N.Y. 2010). They have not done so. To the contrary, '[a]s explained in the Registration Documents . . . the Plan administrator buys the shares for each Plan participant's account." AC ¶ 65. See also Ex. 7, at S-2 ('The Plan Administrator [Wells Fargo Shareowner Services] will buy the shares for your Plan account.'); Ex. 6, at 7 (same). Thus, Plaintiffs did not "directly purchase" any securities from GE and cannot bring a Section 12(a)(2) claim. Merrill Lynch & Co., 714 F. Supp. 2d at 484
(Def. Supp. Memo., p. 14, NYSCEF Doc. No. 113).
The court does not agree. The language the GE Defendants highlights does not support their position. To the contrary, it undermines it. The Plan Administrator purchasing for the plaintiffs' Plan account (i.e., and not for its own account) necessarily means that it should be disregarded as a separate entity for purposes of Section 12 standing analysis. As the plaintiffs correctly argue "GE is liable as a statutory seller because it hired an agent, the Plan administrator, to act on its behalf and sell shares of its common stock directly to Plan participants" (Ptf. Opp. Brief, p. 11, NYSCEF Doc. No. 145). It is beyond cavil that, here, GE "successfully solicited the purchase of a security, motivated at least in part by a desire to serve [its] own financial interests" and, thus, even if direct title in the securities passed to the plaintiffs through the Plan Administrator, GE qualifies as a statutory seller (In re Morgan Stanley Info. Fund Sec. Litig., 592 F3d at 359). The plaintiffs here are not "remote purchasers" trying to "recover against [their] seller's seller" (Pinter, 486 US at 644, n 21). To hold otherwise, would amount to putting form over substance, twisting the statutory seller requirement beyond all logic.
In addition to the requirement that a defendant be a "statutory seller," the remaining requirements for Section 12 claims are that (i) the sale was effectuated "by means of a prospectus or oral communication" and (ii) that prospectus or oral communication "include[d] an [*7]untrue statement of material fact or omit[ted] to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading" (id., citing 15 USC § 77l [a][2]). Here, the Amended Complaint alleges both elements and the GE Defendants do not raise any persuasive arguments to the contrary. Accordingly, the plaintiffs have standing to assert claims under Section 12 of the 1933 Act.
III. As the Plaintiffs have Standing under Section 11 and Section 12, the Section 15 Claims Survive
The GE Defendants argue, based on Rombach v Chang, that the Section 15 claims must be dismissed because the plaintiffs do not have standing to bring claims under Section 11 or Section 12 of the 1933 Act (355 F3d 164, 177-78 [2d Cir 2004]).
Section 15 of the 1933 Act "creates liability for individuals or entities that 'control [] any person liable' under section 11 or 12" of the Act and, thus, "relies in part on a plaintiff's ability to demonstrate primary liability under sections 11 and 12" (In re Morgan Stanley Info. Fund Sec. Litig., 592 F3d at 358). As the Sections 11 and 12 claims survive, the Section 15 claims survive as well.
IV. The Action Is Stayed Based on the Federal Action
The defendants also argue, in the alternative, that this action should be stayed based on the Federal Action. The court agrees.
CPLR § 2201 provides that, "the court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just." "New York courts generally follow the [ ] 'first in-time' rule, which provides the court which has first taken jurisdiction is the one in which the matter should be determined and it is a violation of the rules of comity to interfere" (Syncora Guarantee Inc. v JP Morgan Sec., LLC, 110 AD3d 87, 95 [1st Dept 2013]. Contrary to the plaintiffs' argument in opposition to the stay, the First Department has held that the two actions need not be identical. Rather, a stay is warranted where there is "a substantial identity of parties," and "both actions arose out of the 'same subject matter or series of alleged wrongs'" (PK Rest., LLC v Lifshutz, 138 AD3d 434, 436 [1st Dept 2016]). This standard is readily met here. The Federal Action, which was filed over eight months before this action, and the instant action (i) arise out of the same subject matter or series of alleged wrongs, (ii) involve substantially the same parties, and (iii) seek substantially the same relief. Comity, orderly procedure and judicial economy are all well served by a stay of the instant action as certain rulings in the Federal Action are likely to resolve (or at least streamline) the issues in this case. Staying this case based on the earlier-filed Federal Action, therefore, would avoid the risk of inconsistent rulings, ensure orderly proceedings (including coordinated discovery if the cases go forward) and preserve judicial resources. There is little to no risk of prejudice to the plaintiffs from the stay, nor have the plaintiffs articulated any. Simply put, "neither party will suffer undue detriment or gain undue advantage by having [the earlier-filed] action determined first, particularly since the [other] action may well determine the underlying issue[s]" (Trinity Prods., Inc. v Burges Steel LLC, 18 AD3d 318 [1st Dept 2005]). Finally, the fact that this action involves claims under the 1933 Act and the Federal Action involves claims under the 1934 Act is not a reason to deny a stay motion: "it is inconsequential that different legal theories or claims are set forth in the two actions" (Shah v RBC Capital Mkts. LLC, 115 AD3d 444 [1st Dept 2014]). As noted, the hallmark for a stay under First Department law is that both actions seek to "recover for the same alleged harm based on the same underlying events" (Syncora, 110 AD3d at 96), and that is concededly the case here.
[*8]V. The Court Declines to Address KPMG's Motion
In light of the foregoing, the court need not address KPMG motion to dismiss the claims against it and, indeed, it would be inappropriate to do so.
Accordingly, it is
ORDERED that the branch of motion sequence 005 seeking dismissal for lack of standing is denied; and it is further
ORDERED that the branch of motion sequence 005 seeking a stay is granted to the extent of staying further proceedings in this action, except for an application to vacate or modify said stay; and it is further
ORDERED that either party may make an application by order to show cause to vacate or modify this stay following final adjudication of the Federal Action; and it is further
ORDERED that motion sequence 006 is denied without prejudice and deemed held in abeyance until after the stay in this action is lifted, and it is further
ORDERED that the movant is directed to serve a copy of this order with notice of entry on the Clerk of the General Clerk's Office (60 Centre Street, Room 119) within ten days from entry and the Clerk shall mark this matter stayed as herein provided; and it is further
ORDERED that such service upon the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh); and it is further
ORDERED that the parties are directed to update the court on the status of the Federal Action on the earlier of final adjudication of the Federal Action and April 1, 2020 at 11:30 A.M. by calling the court room for Part 53.
Dated: October 15, 2019
Andrew Borrok, J.S.C.