**Slip Op. 23-25**

# UNITED STATES
# COURT OF INTERNATIONAL TRADE

─────────────────

**Court No. 21-00361**

─────────────────

UNITED STATES,

*Plaintiff,*

v.

CROWN CORK & SEAL USA, INC., *et ano.*,

*Defendants.*

─────────────────

Before: M. Miller Baker, Judge

## OPINION AND ORDER

[Defendants' motion to dismiss Counts I and II of the amended complaint is denied.]

Dated: February 27, 2023

*Jackson D. Toof*, ArentFox Schiff LLP of Washington, DC, argued for Defendants. With him on the papers was *Leah N. Scarpelli*.

*William Kanellis*, Trial Attorney, Commercial Litigation Branch, U.S. Department of Justice of Washington, DC, argued for Plaintiff. With him on the papers were *Brian M. Boynton*, Assistant Attorney General; *Patricia M. McCarthy*, Director; and *Franklin E. White, Jr.*, Assistant Director. Of counsel for Plaintiff was *Philip Hiscock*, Senior Attorney, Office of the

Associate Chief Counsel, U.S. Customs and Border Protection of Chicago, Illinois.

*Baker*, Judge: Before the court is Defendants' motion to dismiss Counts I and II of the government's amended complaint in this action seeking civil penalties for misclassification of imports. For the reasons stated below, the court denies the motion.

I

A

Goods imported into the United States must be "classified." This means that U.S. Customs and Border Protection (Customs) must determine where such goods fit into the Harmonized Tariff Schedule of the United States (HTSUS), 19 U.S.C. § 1202. *See* 19 U.S.C. § 1500(b) (requiring Customs to "fix the final classification and rate of duty applicable to [imported] merchandise"). Customs's classification "is critical because the applicable duty, or tariff, can vary considerably depending on which HTSUS subheading applies." *ARP Materials, Inc. v. United States*, 520 F. Supp. 3d 1341, 1346 (CIT 2021), *aff'd*, 47 F.4th 1370 (Fed. Cir. 2022).

Although Customs is responsible for classifying imports, it is "unable to inspect every import." *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 246 (3d Cir. 2016). Customs therefore relies "primarily on the importers themselves to self-report any duties owed," *id.*, much as the Internal Revenue Service relies upon self-

reporting by taxpayers. The Tariff Act of 1930, as amended, provides that an

> importer of record . . . shall, using reasonable care . . . complete the entry . . . by filing with the Customs Service the declared value, classification and rate of duty applicable to the merchandise, and . . . such other information as is necessary to enable [Customs] to . . . properly assess duties on the merchandise . . . .

19 U.S.C. § 1484(a)(1)(B); *see also* 19 C.F.R. § 141.90(b) (requiring an importer to report "the appropriate subheading under the provisions of the [HTSUS] and the rate of duty for the merchandise being entered").

To give teeth to this requirement, federal law provides that "no person, by fraud, gross negligence, or negligence," may import merchandise into the United States "by means of (i) any document or electronically transmitted data or information, written or oral statement, or act which is material or false, or (ii) any omission which is material." 19 U.S.C. § 1592(a)(1)(A). The United States may bring an action in this court to recover civil penalties for violations of this provision. *See id.* § 1592(e).[1]

In any such action, the burden of proof to establish liability varies according to the level of alleged culpability. When alleging fraud, the government's burden is to establish the violation by clear and convincing

---

[1] Before the government can sue to recover civil penalties, Customs must complete an administrative process prescribed by statute. *See* 19 U.S.C. § 1592(b).

evidence. *Id.* § 1592(e)(2).[2] When alleging gross negligence, the government's burden is to "establish all the elements of the alleged violation." *Id.* § 1592(e)(3).[3] As the statute is silent as to the standard of proof for gross negligence, the default preponderance of the evidence standard applies. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 444 (2011) (referring to the preponderance standard as "the default rule for civil cases"). And when the government alleges negligence, its only burden is to establish a violation; doing so shifts the burden to the defendant to prove that the infraction "did not occur as a result of negligence." 19 U.S.C. § 1592(e)(4).

The civil penalties the government may recover likewise turn on the degree of culpability. "A fraudulent violation of subsection (a) is punishable by a civil penalty in an amount not to exceed the domestic value of the merchandise." *Id.* § 1592(c)(1). A grossly negligent violation is punishable by a civil penalty in an amount not to exceed either the lesser of the merchandise's domestic value or four times the lawful duties, taxes, and fees of which the United States is or may be deprived; alternatively, if the violation did not affect the assessment of duties, the penalty may not exceed

---

[2] Customs defines "fraud" as "a material false statement, omission, or act in connection with the transaction . . . committed (or omitted) knowingly, *i.e.*, . . . voluntarily and intentionally, as established by clear and convincing evidence." 19 C.F.R. Pt. 171 App. B(C)(3).

[3] Customs defines "gross negligence" as "an act or acts (of commission or omission) done with actual knowledge of or wanton disregard for the relevant facts and with indifference to or disregard for the offender's obligations under the statute." 19 C.F.R. Pt. 171 App. B(C)(2).

40 percent of the merchandise's dutiable value. *Id.* § 1592(c)(2). For cases involving simple negligence, the penalty structure is the same as it is for gross negligence, except the amounts are reduced—instead of four times the lawful duties, taxes, and fees, the maximum is two times those amounts, and the maximum is 20 percent of dutiable value if the violation did not affect the assessment of duties. *Id.* § 1592(c)(3).

## B

This case arises out of imports of metal can lids, valued at approximately $51 million, into the United States between 2004 and 2009 by two Crown Cork & Seal entities (collectively, Crown Cork) from related entities in Europe. It is undisputed that Crown Cork misclassified these lids under the HTSUS and as a result underpaid approximately $1.3 million in import duties.[4] It is also undisputed that during the same 2004–09 period, the same Crown Cork entities imported comparable metal can lids from related entities in Canada and properly classified them. NAFTA, however, exempted those Canadian imports from duties.

---

[4] Crown Cork classified the European lids using HTSUS subheading 7326.90.1000, "Other articles of iron or steel: Other: Of tinplate," which avoided any liability for duties. ECF 23, ¶ 23. The parties agree that the correct classification was under HTSUS subheading 8309.90.0000, "Stoppers, caps and lids (including crown corks, screw caps, and pouring stoppers), capsules for bottles, threaded bungs, bung covers, seals and other packing accessories, and parts thereof, of base metal: Other [than Crown corks (including crown seals and caps), and parts thereof]." This classification carried a 2.6% *ad valorem* duty rate on the value of the merchandise imported from Europe. ECF 23, ¶ 17.

After the government detected the misclassification of the European imports, Crown Cork admitted the error and made the government whole.

Over a decade later,[5] the government brought this action seeking civil penalties for Crown Cork's errors in classifying the European can lid imports. The government's initial complaint alleged a conspiracy by various Crown Cork entities and other unidentified co-conspirators to fraudulently classify the imported can lids. ECF 2, ¶¶ 6–7. The government further alleged alternative theories of culpability and sought a different penalty amount for each—approximately $18.1 million under its fraud theory,[6] *id.* ¶¶ 25–26, approximately $5.2 million under a gross negligence theory, *id.* ¶ 29, and approximately $2.6 million under a negligence theory, *id.* ¶ 32.

Crown Cork moved to dismiss the original complaint's Counts I and II—the fraud and gross negligence counts. Following briefing, the court heard oral argument and granted the motion for reasons stated

---

[5] The parties agreed to toll the limitations period in the run-up to this suit.

[6] If it sufficiently pled and then proved fraud, notionally the government could recover a civil penalty equivalent to the misclassified can lids' full value, or approximately $51 million. *See* 19 U.S.C. § 1592(c)(1). The reduced penalty sought by the government reflects a recognition of constitutional constraints. *See, e.g., United States v. Bajakajian*, 524 U.S. 321, 337 (1998) (holding that a forfeiture "grossly disproportional to the gravity of the defendant's offense . . . is unconstitutional" under the Eighth Amendment's Excessive Fines Clause).

from the bench. *See* ECF 22. The court explained that in its view the government's complaint failed to surmount the "plausibility" threshold required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). ECF 25, at 39:19–40:14. The court granted the government leave to file an amended complaint within 21 days after the date of the order. ECF 22.

The government then filed an amended complaint. ECF 23, ¶¶ 33–40. The government again alleges that Crown Cork conspired with unnamed co-conspirators to import the can lids from Crown Cork entities in Europe using fraudulent statements to avoid paying import duties. *Id.* ¶¶ 10–11.

The most significant new material is a more fulsome description of the exact circumstances of the relevant import transactions. The amended complaint contains an exhibit identifying for each entry the entry number, the date and port of entry, the correct HTSUS subheading and applicable duty rate, the product value, the duty payable, and the revenue lost by the entry's incorrect classification. *Id.* ¶ 12 & Ex. A.[7]

The amended complaint alleges that Crown Cork "caused these 543 false statements to be made to the [g]overnment by submitting or causing to be submitted information containing HTSUS subheadings

---

[7] Exhibit A was also attached to the original complaint, in which the government simply said it listed 543 entries of metal lids that were "entered or introduced into the commerce of the United States by means of material false statements, acts, or omissions." ECF 2, ¶¶ 6, 7.

which falsely classified the metal lids they imported." *Id.* ¶ 13. The amended complaint further avers—in another change from the original complaint—that the licensed brokers used by Crown Cork to file the necessary paperwork for the entries "relied exclusively upon representations" from Crown Cork "for descriptions, entry information[,] and classifications related to these metal lids." *Id.* ¶ 15.

The amended complaint further alleges that Crown Cork knew the correct HTSUS subheadings and intentionally misclassified the European can lids under different subheadings subject to lower duties. *Id.* ¶¶ 17–18. The amended complaint notes that during the same period, Crown Cork imported identical or similar merchandise from Canada and classified those entries properly. *Id.* ¶¶ 20–22. These correctly classified Canadian imports were exempt from duties because of NAFTA. *Id.* ¶ 21.

Crown Cork moved to dismiss Counts I and II of the amended complaint. ECF 24. The government opposed, ECF 26, and Crown Cork replied, ECF 27. The court then heard oral argument and received supplemental briefing. *See* ECF 36; ECF 37.

C

The government brings this suit under 19 U.S.C. § 1592. The court has subject-matter jurisdiction over such actions under 28 U.S.C. § 1582.

At this "motion to dismiss stage, [the court] must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the

claimant." *Bioparques de Occidente, S.A. de C.V. v. United States*, 31 F.4th 1336, 1343 (Fed. Cir. 2022) (cleaned up).

## II

### A

Crown Cork first contends that the amended complaint's fraud and gross negligence counts fail to satisfy the particularity requirements of Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." USCIT R. 9(b). As an initial matter, Crown Cork's argument sweeps too broadly because Rule 9(b)'s requirements do not apply to the gross negligence claim. *See Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 437 (S.D.N.Y. 2010) ("[C]laims for gross negligence, like claims of negligence, are governed by Rule 8(a), not Rule 9(b) . . . . Plaintiffs are not required to plead gross negligence with particularity . . . .").

Crown Cork argues that the fraud claim here violates Rule 9(b) because it is insufficiently specific despite the government having had ten years to investigate the matter.[8] The company asserts that "[d]espite

---

[8] The parties' supplemental briefing disagrees on the duration of the government's "investigation" in this matter. *Compare* ECF 36, at 6 (government arguing that the investigation did not take ten years and that the bulk of the period involved "the administrative penalty process and

having over a decade to investigate the inadvertent misclassification of can ends . . . the [g]overnment continues to put forward only speculative and unsubstantiated allegations." ECF 37, at 2. The company contends that Rule 9(b) requires the government to identify the specific Crown Cork employees and brokers involved in the relevant import transactions. ECF 24, at 15.

The government responds that Rule 9(b) requires that a complaint set forth "the who, what, when, where, and how: the first paragraph of a newspaper story." ECF 36, at 8 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). It further contends that the amended complaint achieves this through Exhibit A, a table listing the 543 entries of lids at issue. *Id.* at 9. While the table does not name individual employees involved in the activity, it identifies the two Crown Cork companies named as defendants here as the responsible parties. *See generally* ECF 23-1 (table); *see also* ECF 23, ¶ 12 (so explaining). The court agrees that the government has satisfied the "who, what, when, where, and how" pleading requirements.

That the government is, or may be, in possession of more detailed information is not by itself sufficient to demand that the government use that information in

negotiations"), *with* ECF 37, at 4–6 (Crown Cork arguing that the investigation ran from 2011 to 2021 and concluded with issuance of an administrative summons in 2021). As a practical matter, the parties are talking past each other. In the interest of simplicity, this opinion uses the term "the investigation" to refer to the entire process up to the government's filing suit.

its amended complaint. "Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings," for if the court expands the inquiry beyond the pleadings, it must treat the motion as one for summary judgment. *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1360 (Fed. Cir. 2019) (quoting *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)).[9] Thus, the government is correct that issues relating to what was gleaned from its investigation are matters for discovery and possible summary judgment motions.

For these reasons, the court concludes that the government's amended complaint survives Crown Cork's Rule 9(b) challenge.

B

Crown Cork's second line of attack is that the amended complaint's fraud and gross negligence counts fail the notice requirements of Rule 8 as construed in *Twombly* and *Iqbal*. *See* USCIT R. 8(a)(2) (requiring a complaint to assert "a short and plain statement of the claim showing that the pleader is entitled to relief").

---

[9] There is an exception whereby the court may consider "judicially noticeable matters outside the pleadings" without converting the motion into one for summary judgment, but the judicially noticeable facts "must not be subject to reasonable dispute." *Id.* (cleaned up). Here, no party has argued that the facts from the government's investigation are judicially noticeable.

*Twombly* and *Iqbal* represent something of a revolution in federal civil practice, as they "moved us away from a system of pure notice pleading." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013) (citing 5 Charles Alan Wright et al., *Federal Practice and Procedure* § 1216, at 71 (2012 supp.)). "In addition to providing fair notice," *id.*, a complaint "must allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Iqbal*, 556 U.S. at 678). This "plausibility" standard

> is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (cleaned up). "Something more is needed, such as facts tending to exclude the possibility that the [defendant's] alternative explanation is true . . . to render [a] plaintiff['s] allegations plausible within the meaning of *Iqbal* and *Twombly*." *Century Aluminum*, 729 F.3d at 1108.

Here, the amended complaint goes beyond alleging facts that are merely consistent with Crown Cork's intentional misclassification of its European imports—it alleges that at the same time the company also correctly classified identical products imported from Canada, which were conveniently duty free under NAFTA. That additional allegation tends to exclude the

possibility that Crown Cork innocently misclassified its European imports and therefore nudges Count I over "the line between possibility and plausibility of entitlement to relief" for purposes of Rule 8. *Iqbal*, 556 U.S. at 678.[10]

That brings us to Count II, the government's gross negligence claim. Significantly for present purposes, the relevant regulation defines gross negligence as "an act or acts (of commission or omission) done with *actual knowledge* of or wanton disregard for the relevant facts and with indifference to or disregard for the offender's obligations under the statute." 19 C.F.R. Pt. 171 App. B(C)(2) (emphasis added).

Given that definition's incorporation of "actual knowledge," the court concludes that the government's allegation regarding the Canadian imports also nudges Count II across the line between possible and plausible. Crown Cork obviously knew the correct classification of these products, as evidenced by its Canadian imports. That knowledge tends to exclude the company's alternative explanation of simple negligence. In effect, Crown Cork put itself on notice that it incorrectly classified its European imports, meaning that the amended complaint plausibly alleges that the company either knew of its ongoing error or turned a blind eye to that reality. *Cf. United States v. Great Neck Saw Mfrs., Inc.*, 311 F. Supp. 3d 1337, 1342 (CIT 2018) (government's complaint sufficiently alleged

---

[10] The bare fact that Crown Cork misclassified its European imports would not, standing alone, support a plausible inference that the company did so fraudulently.

gross negligence as to entries made after Customs put the importer on notice as to irregularities). Like Count I, Count II also passes muster under Rule 8 as construed in *Twombly* and *Iqbal*.

\*   \*   \*

For the foregoing reasons, the court **DENIES** Crown Cork's motion to dismiss (ECF 24) Counts I and II of the amended complaint. The court further **OR-DERS** the parties to meet and confer and report within 10 days the parties' views on whether referral to mediation would be appropriate. *See* USCIT R. 16.1. In the meantime, the company's obligation to answer the amended complaint is **STAYED** pending further order of the court.

Dated: February 27, 2023    /s/ *M. Miller Baker*
       New York, New York   M. Miller Baker, Judge